## BROWN and Others v. CENTRAL PAC. R. CO.*

### No. 11,383; January 3, 1887.

#### 12 Pac. 512.

**Railroads—Contributory Negligence.**—Where, on the Trial of an action for damages against a railroad company brought for the death of a train conductor in defendant's employ, it appears that such conductor was in absolute control of a long freight train; that there were three brakemen who were under him, and whose positions, respectively, were on the front, middle and rear of the train; that the middle brakeman, when the train was leaving the last station at which it stopped before the accident, was about to go to his position, when he was stopped by the conductor to assist him in checking waybills, and remained in the baggage-car after such checking was finished, and until the accident happened, there is evidence of negligence in the conductor; but the verdict for plaintiff may be sustained,

———————

*For subsequent opinion in bank, see 72 Cal. 523, 14 Pac. 138.

where the instructions of the judge are clear, on the theory that the jury considered that the negligence of the conductor did not contribute proximately to produce the accident.

**Trial—General or Special Verdict—Omission to Make Special Findings.**—When, on the trial of an action for damages, the jury are instructed that they may return either a general or a special verdict, but, if a general verdict is returned, they must also make written findings on the particular findings of fact submitted to them in writing, and the jury return a general verdict for the plaintiff, without passing on the special facts submitted, which is received and entered by the court without objection by counsel, the defendant cannot object to the verdict, on appeal, as irregular, as the reception and entry of the verdict by the court amounted to a waiver of the request for the special findings.[1]

APPEAL from Superior Court, Los Angeles County.

Action for damages against railroad company. Judgment for plaintiffs. Defendant appeals.

Glassell, Smith & Patton for appellant; Howard, Brousseau & Howard for respondent.

SEARLS, C.—This is an action to recover damages by plaintiffs, the widow and children, as heirs, of Gilman George Brown, deceased, for the death of the latter, through the alleged negligence of defendant, a railroad corporation. Plaintiffs had a verdict and judgment for ten thousand dollars and costs, from which judgment, and from an order denying a new trial, defendant appeals.

The decedent of plaintiffs was a conductor on the railroad of defendant, and, as such, left Los Angeles on the evening of April 7, 1877, in charge of a mixed train, consisting of over twenty cars, drawn by a locomotive engine in charge of Frank Wilson as engineer. While proceeding on its way, about midnight of the same day, the train, when at or near the foot of a slightly descending grade, broke in two, or parted; the front part with the engine running a considerable distance before the accident was discovered. When discovered, the engineer, in obedience to the signal of the only brakeman left upon the front part of the train, reversed his engine and backed up, in doing which he collided with the still advancing

---

[1] **Cited** in Livingston v. Taylor, 132 Ga. 9, 63 S. E. 698, holding that by passive acquiescence in a formal verdict one waives the right to a special verdict.

rear portion of the train, partially wrecking the latter, and killing the conductor, Brown.

The gravamen of the charge against defendant, as contained in the complaint, is that, through its negligence, carelessness and default, it employed, as engineer upon its train, one Frank Wilson, an unsafe, unskillful, untrustworthy and incompetent person, of whose unskillfulness, untrustworthiness and incompetency defendant had notice; and that by reason of the negligence, carelessness and lack of skill of said engineer, the accident occurred, whereby Brown was killed. The answer denies all negligence on the part of defendant, and avers that the accident and its consequences were due to the negligence of Brown, the deceased conductor, in not having his brakeman at their posts, etc.

Plaintiffs' intestate, as conductor of the train, and Frank Wilson, the engineer, by whose negligence it is claimed Brown was killed, were coemployees in the same general business. It follows that defendant could only be liable for the negligent act of the engineer whereby deceased lost his life, upon the theory that it neglected to use ordinary care in the employment or retention of such engineer: Hogan v. Central Pac. R. Co., 49 Cal. 130.

"An employer is not bound to indemnify his employee for losses suffered by the latter in consequence of the ordinary risks of the business, in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, unless he has neglected to use ordinary care in the selection of the culpable employee": Civ. Code, sec. 1970; Sweeney v. Central Pac. R. Co., 57 Cal. 15.

Under the pleadings and evidence in the cause, three propositions were essential to recovery by the plaintiffs: (1) Negligence or the want of ordinary care by defendant in the employment or retention of Frank Wilson as an engineer; (2) negligence of such engineer, whereby Brown was killed; and (3) the absence of concurring negligence on the part of Brown proximately contributing to the injury. There was evidence pro and con upon each of these propositions.

Upon the first, there was testimony tending to show that Wilson, the engineer, had been for some time addicted to the intemperate use of intoxicating drinks, to such a degree and

in so public a manner that defendant's officers whose duty it was to employ, superintend and discharge engineers would be likely to know, and should have known, of his habit, and that he had been previously discharged once or twice by defendant on another division on account of intoxication. This was denied by defendant.

As bearing upon the first and second propositions, there was uncontradicted testimony that on the day of the accident Wilson had with him upon his engine a bottle of whisky, from which he and others drank freely; that, when the train had parted, he ran back over the road without sending a flagman ahead, or sounding his whistle or bell, which was in violation of the rules of the company. There was also testimony to the effect that Wilson was either asleep, or stupid from drink, when the train parted, and had to be aroused by his fireman, and that in backing up he did so at a dangerous rate of speed. These last facts are contradicted.

Without proceeding to state the testimony, which is quite voluminous, it is sufficient to say there was evidence sufficient to uphold the verdict of the jury, and the cause should not be reversed for want of evidence or because the verdict was contrary to the evidence.

The only branch of the case which has awakened serious doubts as to the correctness of the verdict is that relating to the contributory negligence of the deceased. He was conductor of the train, and was making his first trip over the road. The night was clear, and the moon shone, but upon the desert track over which the train was passing the dust obstructed the view to a great extent. The road was composed of not heavy, but of varying and changing, grades. The train was a long and heavy one, and was supplied with three brakemen, one of whom acted also as baggage-master. The conductor was master of the train, and, under ordinary circumstances and for all practical purposes, had absolute control over all persons employed thereon.

The position of the brakemen should have been, one in front, one at or near the middle of the train, and the other upon the rear car. The middle brakeman, upon leaving Indio, the last station at which the train stopped before the accident, was about to go to his place, when he was detained by the conductor to assist the latter in calling off and checking

way-bills. That office performed, he remained in the baggage-car with the conductor, and was lying down upon some mail-sacks when the accident occurred.

Neither the conductor nor brakeman was aware the train had parted. They felt a shock as if from passing over a rough joint, and, although the evidence is not clear upon the point, we suppose the detached portion, consisting of say six cars, slowed down. We infer this from the fact that the conductor asked the brakeman if they were approaching Walters, or ''Is this Walters?''—a very natural inquiry for a stranger upon the road on finding the speed of his train checked. He was informed they had not run far enough for Walters. Mr. Brown then rose, looked out the side of the baggage-car, and so far as appears saw nothing to indicate trouble. The crash came very soon thereafter.

It would seem to us that the conductor was negligent in not having his crew at their posts, and we can only uphold the verdict upon the theory that the jury, from all the facts presented, and under the very clear instructions of the court upon the point, must have come to the conclusion that the negligence of the conductor did not contribute proximately to produce the fatal result. We are not quite satisfied upon the point, but, as before stated, do not feel warranted in setting the verdict aside for this cause.

The giving of the following instruction is assigned as error: ''Second. If you find from the evidence that the plaintiffs are the widow and children, respectively, of Gilman George Brown; that said Brown met his death in consequence of the negligence of the defendant, through its employee Frank Wilson, without such negligence on his part as to directly contribute to the accident—then your verdict should be for the plaintiffs, and you should assess their damages at such sum as under all the circumstances of the case may be just; and, in determining the amount of such damages, you have the right to take into consideration the pecuniary loss, if any, suffered by these plaintiffs in the death of the deceased by being deprived of their support by him; also the relations proved as existing between the plaintiffs and deceased at the time of his death, and the injury, if any, sustained by plaintiffs in the loss of his society.''

The instruction simply informs the jury as to their duty in the premises if they shall find that Brown, without contributory negligence on his part, "met his death in consequence of the negligence of the defendant, through its employee Frank Wilson." It does not state, or purport to state, the facts or circumstances which, under the pleadings and proofs, would constitute negligence on the part of defendant. It speaks of negligence in the abstract, for the apparent purpose of reaching the conclusions flowing therefrom and consequent thereto.

In a criminal case against a defendant charged with murder, there can be no impropriety in charging the jury that, if they find the defendant guilty of murder in the first degree, they may fix the penalty at, etc., although such charge failed to define what constitutes murder. So, in the present case, the instruction under consideration defined the result from a given standpoint. The data from which this standpoint was to be determined—its existence or nonexistence ascertained—was to be found in the other instructions given, between which and the one indicated there was and is no conflict.

We should be glad to insert at large the instructions given, containing, as we think they do, a clear exposition of the law applicable to the case; but their length precludes us from so doing.

After instructing the jury, the court, at the request of counsel for defendant, submitted to them certain questions of fact in writing, and in reference thereto instructed them as follows: "In this case you, in your discretion, may render a general or a special verdict; but the court instructs you that, if you render a general verdict, you will also find upon the particular questions of fact stated in writing, and herewith submitted to you, and make your written findings thereto." The jury returned a general verdict in favor of plaintiffs, but did not pass upon the special facts submitted.

One of the members of the firm of attorneys who acted in the cause for the defendant was present at the rendition of the verdict, polled the jury, and made no objection to the want of findings upon the special facts, and no notice seems to have been taken of the omission. The attorney so present had not participated in the trial, but consented, on behalf of his law firm, to receive the verdict.

The action being for the recovery of money only, it was discretionary with the jury to find a general or special verdict, subject to the provision that, if they found a general verdict, the court in its discretion might require them to find upon particular questions of fact in addition thereto: Code Civ. Proc., sec. 625. This, as shown above, the court required, but the jury failed to respond. The verdict as rendered was complete, and such as the court was authorized to receive, and the reception and entry of verdict by the court and counsel without objection amounted to a waiver of the request for findings upon the particular questions of fact.

Upon the whole case as presented we are of opinion the judgment and order appealed from should be affirmed.

We concur: Belcher, C. C.; Foote, C.

By the COURT.—For the reasons given in the foregoing opinion the judgment and order are affirmed.